```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

KELVIN J. READON, SR.,

        Plaintiff,

vs.                                    Case No. 2:10-cv-236-FtM-29SPC

LIEUTENANT WALKER; LIEUTENANT KILGO;
LIEUTENANT GATTO,

        Defendants.
_____

## OPINION AND ORDER

### I.  Status

This matter comes before the Court upon review of the Motion to Dismiss (Doc. #46, Mot. Dismiss), filed on behalf of Defendants Gatto, Kilgo, and Walker.  Plaintiff filed a response in opposition to the Motion (Doc. #47, Response).  This matter is ripe for review.

Kelvin Readon, a *pro se* plaintiff, initiated this action by filing a Civil Rights Complaint Form (Doc. #1) pursuant to 42 U.S.C. § 1983 while in the custody of the Florida Department of Corrections.  See docket.  Upon review of the Complaint, the Court directed Plaintiff to file an Amended Complaint (Doc. #9) and Plaintiff complied (Doc. #17) on December 10, 2010.  Thus, Plaintiff is proceeding on his Amended Complaint (Doc. #17, hereinafter "Amended Complaint").

## II. Facts

In the Amended Complaint, Plaintiff names Defendants from Charlotte Correctional Institution, specifically Lieutenants Walker and Kilgo, and Sergeant Gatto. Amended Complaint at 1; Mot. Dismiss at 2. According to the Complaint Plaintiff, who suffers from "bipolar with psychotic features, and . . . borderline intellectual functioning, ADHD, antisocial personality disorder, auditory hallucinations, and a history of depression," was subjected to cruel and unusual punishment while incarcerated at Charlotte Correctional on three occasions: July 2, 2009, July 8, 2009, and August 18, 2009. See id. at 10-15.

### a. July 2 Incident

On July 2, 2009, Plaintiff alleges excessive force was used on him after he tapped on the window of his cell door multiple times to get "the guards'" attention to ask for toothpaste. Id. at 10. Specifically, Plaintiff alleges that around noon time when Defendant Walker and Sergeant John Doe entered the wing to conduct a security check, Plaintiff tapped on the glass of his cell door to get the attention of the unidentified correctional officer. Id. Plaintiff told the officer that he had no toothpaste and the officer explained that toothpaste is provided the third week of every month. Id.

Next, when Defendant Walker was near Plaintiff's cell, Plaintiff states that he got Defendant Walker's attention by tapping on the cell door and told him he had no toothpaste. Id. Plaintiff claims Defendant Walker told him using expletives to "get off his [] door, and he has to much to do then hunt down toothpaste." Id. Plaintiff acknowledges that he then "began tapping [as] loudly as he could on the window." Id. at 11. Plaintiff claims Defendant Walker returned to Plaintiff's cell and told him, using other words, that he would be sprayed. Id.

At this point Plaintiff states that he "ceased his disruptive behavior." Id. Plaintiff alleges that approximately 15 to 20 minutes later, Defendant Kilgo applied chemical agents on Plaintiff.[1] Id. at 12. Plaintiff alleges that Defendant Kilgo used "two cans" of chemical agents. Id. When the second can was being used on Plaintiff, Plaintiff states that he slipped on the floor, hit his head on the sink, and split his eye opened. Id. at 12-13. At this point, Plaintiff claims Defendant Kilgo then opened Plaintiff's cell door and continued to use chemical agents directly

---

[1]Plaintiff claims Defendant Kilgo was in front of Plaintiff's door being recorded by a John Doe officer when Kilgo gave Plaintiff the order to cease his disorderly behavior. Id. at 12. Plaintiff claims Defendant Kilgo and the John Doe officer who was doing the recording left Plaintiff's cell to meet Defendant Walker at another inmate's cell down the hall who was "kicking belligerently on his cell door. When the kicking stop[p]ed Defendant Kilgo ran . . . over to the Plaintiff [sic] cell, opened the tray slot and began to apply the chemical agents." Id.

on Plaintiff's face while Plaintiff was semi-conscious on the floor of his cell. Id.

In the exhibit Plaintiff attaches to his initial Complaint, Plaintiff received a disciplinary report stemming from this incident for inciting a minor disturbance by shouting obscenities at the staff, beating on his door, yelling to other inmates, and refusing to comply with correctional officer Bates' directives.[2] Doc. #1-1 at 8. The disciplinary report further states that chemical agents had to be used on Plaintiff in order to get him to stop his disruptive behavior. Id.

**b.  July 8 Incident**

On July 8, 2009, Plaintiff alleges that Defendant Gatto came to his cell door at around 10 in the morning and told him to "get straped [sic] up because we're coming at'cha [sic]." Id. at 13. In response, Plaintiff claims he packed some of his personal property and declared a "psychological emergency." Id. Plaintiff submits that because no one responded to his declared emergency, he pulled a safety device off the fire sprinkler in his cell causing the fire sprinkler to activate. Id. Plaintiff states that

---

[2]In addition to the allegations in the Amended Complaint, Plaintiff also included exhibits attached to his initial Complaint. Attachments to a complaint constitute a part of the pleading. Crenshaw v. Lister, 556 F.3d 1283, 1291 (11th Cir. 2009)(citing Fed. R. Civ. P. 10(c)); see also Gross v. White, 340 F. App'x 527, 533 (11th Cir. 2009)(stating a district court need not disregard exhibits plaintiff attached to initial complaint when reviewing a motion to dismiss plaintiff's second amended complaint).

unidentified officers removed him from his cell and brought him to the shower. Id.

Plaintiff then states that he was removed from the shower by Defendant Kilgo and Defendant Gatto for escort, presumably back to Plaintiff's cell. Id. When they approached the exit door of F-dormitory, Plaintiff claims Defendant Gatto "started screaming out stop resisting." Id. Plaintiff alleges he was then "unlawfully physically assaulted" by Defendants Gatto and Kilgo until the point he lost consciousness. Id. at 14. Plaintiff returned to consciousness when an unidentified guard assisted him to his feet. Id.

The disciplinary report Plaintiff attaches to his initial Complaint reveals that Plaintiff received a disciplinary report after he became argumentative with Defendant Gatto, pushed Gatto into a door jam, and refused to cease his disorderly actions until force became necessary. Doc. #1-1 at 9.

**c.  August 18 Incident**

Plaintiff alleges that at approximately 9 in the morning an unidentified guard told him to remove his photographs from the heater located in the back of his cell. Amended Complaint at 14. Plaintiff states that he complied with the guard's order. Id. Plaintiff alleges that Defendant Gatto then approached the cell and told Plaintiff to "hand over his property" because Defendant Kilgo placed him on property restriction. Id. Plaintiff admits that in

"a raging manner" he "screamed" at Gatto using expletives and, using other words, asked Gatto why the guards continue to "mess" with him. Id.  Plaintiff claims Defendant Kilgo then appeared at his cell door with a smile on his face, and in summary told Plaintiff that he would "brake his monkey ass" one way or another. Id.

After the Gatto and Kilgo left the cell door, Plaintiff states that he declared a "psychological emergency." Id.  Plaintiff claims that Captain Worst told Plaintiff he would bring medical down to see Plaintiff only after he handed over his personal property. Id.  Plaintiff acknowledges that he disobeyed the Captain's directive and told the Captain that "if they wanted it [the property] they had [sic] to come in his cell and get it." Id.

Approximately one hour later, Plaintiff claims the cell extraction team arrived at his cell and when his cell door was opened, he dropped to the floor. Id.  Plaintiff alleges the extraction team "dragged" him to the center of his cell and unlawfully assaulted him using a pair of pliers to "pull up" his right big toe nail. Id.  Plaintiff also claims he suffered minor cuts and bruises on his face and rib cage area. Id.

The exhibits attached to Plaintiff's initial Complaint reveal that Plaintiff received a disciplinary report on August 18 for disobeying a correctional officer's order after Plaintiff refused to comply with the guard's order to pick up his cell. Doc. #1-1 at

11. The disciplinary report notes that Plaintiff was the sole occupant of the cell and the guard saw the mattress rolled up on the floor, personal property strewn about the cell, a sheet covering the back window, and a blanket lying on the floor. Id.

As relief for the alleged excessive use of force, Plaintiff seeks a reward of damages "sustained through general negligence (culpable, wanton, gross, concurrent) and libel in the total amount of two hundred thousand dollars ($200,000)."at 9.

### III.  Motion to Dismiss

Defendants move to dismiss the action under either § 1915(e)(2)(b)(ii), or Rule 12(b)(6). See generally Motion. In particular, Defendant Walker contends that Plaintiff made no allegations that he was involved with either of the alleged incidents on July 8, 2009, and August 18, 2009. Motion at 7. Instead, the Complaint only alleges that Walker was involved with the July 2 incident. With respect to the July 2 incident, Defendant Walker argues that Plaintiff does not demonstrate that the use of force was unnecessary, wanton, sadistic, or malicious, for the purpose of causing harm. Id. at 8. Defendant Walker points out that Plaintiff acknowledges that he was tapping on the cell door and being disruptive. Id. Irrespective, Defendant Walker submits that Defendant Kilgo applied the chemical agents, not him, and the record does not allege that Walker ordered chemical agents to be used, or was present when they were used.

Id. Moreover, because Walker held a position as a lieutenant, Walker would not have ordered another lieutenant, Lieutenant Kilgo, to apply chemical agents. Id. Thus, Defendant Walker moves to be dismissed.

Defendant Gatto notes that there are no allegations in the Complaint that he was involved with the July 2 incident. Id. at 9. With respect to the July 8 incident, Defendant Gatto points to the disciplinary report Plaintiff received and states force was necessary to gain Plaintiff's compliance. Id. at 4. With respect to the August 18 incident, Defendant Gatto asserts that the only allegations regarding Gatto's involvement is that he told Plaintiff he was being placed on property restriction and Plaintiff responded by yelling at Gatto in a "raging manner." Id.

With respect to the July 2 incident, Defendant Kilgo asserts that the amount of force used was only the amount necessary to cease Plaintiff's disruptive behavior. Id. at 10. Similarly, with respect to the July 8 incident, Defendant Kilgo points to Plaintiff's disciplinary report and argues that use of force was necessary to gain Plaintiff's compliance. Id. at 10-11. With respect to the August 18 incident, Defendant Kilgo points out that the only allegations against him involve him allegedly threatening Plaintiff to break his "monkey ass." Id.

## IV. Standard of Review[3]

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). Thus, the Court must accept all factual allegations in Plaintiff's Complaint as true and take them in the light most favorable to the plaintiff. Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008). Conclusory allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009)(discussing a 12(b)(6) dismissal); Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

The Court employs the Twombly-Iqbal plausibility standard when reviewing a complaint subject to a motion to dismiss. Randall v. Scott, 610 F.3d 701, 708, fn. 2 (11th Cir. 2010). A claim is plausible where the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the

---

[3] The Court will not apply the provisions of § 1915(e)(2)(b)(ii) and finds 12(b)(6) the proper standard of review.

-9-

plaintiff's claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007); Marsh, 268 F.3d at 1036 n.16. Specifically, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citations omitted). Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. Ashcroft, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." See Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1968-69 (citations omitted) (abrogating Conley, 355 U.S. 41 in part). Additionally, there is no longer a heightened pleading requirement. Randall, 610 F.3d at 701. Because Plaintiff is proceeding *pro se*, her pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)).

### V. Applicable Law & Findings

**A. Section 1983**

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges,

or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

**B. Eighth Amendment - Cruel and Unusual Punishment**

The Eighth Amendment, which applies to the states through the Fourteenth Amendment, can give rise to claims challenging the excessive use of force. Thomas v. Bryant, 614 F.3d 1288, 1304-05 (11th Cir. 2010)(reviewing categories of claims under the Eighth Amendment). An excessive-force claim requires a two-prong showing: (1) an objective showing of deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities"; and, (2) a subjective showing that the official had a "sufficiently culpable state of mind." Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)(other citations omitted). It is the "unnecessary and wanton

-11-

infliction of pain" caused by force used "maliciously and sadistically" for the very purpose of causing harm that constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 322 (1986). Thus, where an Eighth Amendment claim is based upon allegations of excessive force, the question turns on whether the prison guard's "force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005). To determine whether force was applied "maliciously and sadistically," courts consider the following factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999)(quotations and citations omitted). Although the extent of the injury is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied, it is not solely determinative of an Eighth Amendment claim. Wilkins v. Gaddy, ____ U.S. ____, 130 S. Ct. 1175, 1178 (2010)(per curiam). "An inmate who is gratuitously beaten by guards does not lose his ability to pursue

an excessive force claim merely because he has the good fortune to escape without serious injury." Id. at 1178-79.

Moreover, in the context of prison discipline, a distinction is made between "punishment after the fact and immediate coercive measures necessary to restore order or security." Ort v. White, 813 F.2d 318, 324-325 (11th Cir. 1987). When a prison's internal safety is of concern, courts conduct a more deferential review of the prison officials' actions. Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991)(citations omitted). Indeed, "[t]hat deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." Whitley, 475 U.S. at 322; See also Bell v. Wolfish, 441 U.S. 520, 547 (1979).

### 1. July 2 Incident-Defendants Walker and Kilgo

According to the Amended Complaint, Plaintiff alleges Defendants Walker and Kilgo were involved in the July 2 incident. Defendant Gatto was not involved in the July 2 incident. The Court will first address the allegations against Defendant Walker, and then turn to the allegations involving Defendant Kilgo.

The Amended Complaint contains few allegations regarding Defendant Walker's involvement in the incident. In pertinent part, Plaintiff only alleges that Defendant Walker told Plaintiff to stop

banging on the cell door, that he had too much to do to search for toothpaste for him, and that he would be sprayed for his disruptive behavior. The Amended Complaint contains no allegations that Defendant Walker was present when Kilgo applied chemical agents on Plaintiff. Nor does the Amended Complaint allege that Defendant Walker directed Defendant Kilgo to use chemical agents on Plaintiff. As Defendants point out, as a Lieutenant, Defendant Walker would not have directed another Lieutenant, Defendant Kilgo, to use chemical agents on Plaintiff. Plaintiff's Reply only contains conclusory allegations that all of the Defendants acted in "caho[o]ts." Reply at 1. Because the Amended Complaint does not sufficiently allege a causal connection between Defendant Walker and Defendant Kilgo's use of chemical agents on Plaintiff on July 2, the Court grants Defendant Walker's Motion with respect to the July 2 incident.

The Amended Complaint alleges that Defendant Kilgo applied chemical agents to Plaintiff on July 2. Plaintiff's exhibits attached to his Complaint reveal that Plaintiff received a disciplinary report stemming from the July 2 incident for inciting a minor disturbance by shouting obscenities at the staff, beating on his door, yelling to other inmates, and refusing to comply with correctional officer Bates' directives. Doc. #1-1 at 8. Plaintiff neither disputes that he received a disciplinary report, nor does he dispute the facts contained in the disciplinary report. In

fact, Plaintiff acknowledges in his Amended Complaint that his behavior was "disruptive." Amended Complaint at 11. Thus, the Amended Complaint and the exhibits attached to Plaintiff's initial Complaint evidence that Defendant Kilgo at least initially applied chemical agents on Plaintiff because he was being a disciplinary problem. The Court, however, cannot dismiss the action against Defendant Kilgo with respect to the July 2 incident because the Amended Complaint alleges that Defendant Kilgo applied "two cans" of chemical agents on Plaintiff. Plaintiff claims the cell floor became so slippery from the amount of chemical agents sprayed on him that he slipped and fell onto the cell floor. Plaintiff further alleges that Kilgo continued to spray chemical agents directly on Plaintiff's face after he was laying semi-conscious on the cell floor. Thus, while the initial use of force apparently stemmed from Plaintiff's disruptive behavior, the Amended Complaint states a claim with respect to the amount of force Defendant Kilgo used against Plaintiff on July 2. The facts in the disciplinary report are not at odds with Plaintiff's allegations that the amount of force used by Kilgo was excessive. Accordingly, the Court denies Defendant Kilgo's Motion with respect to the July 2 incident.

### 2. July 8 Incident – **Defendants Gatto and Kilgo**

The Amended Complaint contains no allegations regarding Defendant Walker and the July 8 incident. Therefore, the Court

finds no causal connection alleged between Defendant Walker and the July 8 incident. Defendant Walker's Motion is granted with respect to the July 8 incident. The Court now turns to address this claim against Defendant Gatto and Kilgo.

In summary, according to the Amended Complaint, after Plaintiff activated the fire sprinkler in his cell, Plaintiff was brought to the showers. During Plaintiff's escort from the shower, Plaintiff claims that Defendants Gatto and Kilgo jumped on Plaintiff for no reason at all and beat him until the point that he lost consciousness. Plaintiff alleges he suffered injuries to his mouth, nose, face, and rib cage. Defendants point out that Plaintiff received a disciplinary report stemming from the July 8 escort for becoming argumentative and pushing Defendant Gatto into the door jam, as evidenced by the disciplinary report Plaintiff attaches to his initial Complaint. Therefore, Defendants argue that force was necessary to gain Plaintiff's compliance.

Here, the allegations in Plaintiff's Amended Complaint are at odds with the exhibits Plaintiff attached to his initial Complaint. In the Amended Complaint, Plaintiff alleges he did nothing wrong during the escort, but the attachments he filed with his initial Complaint show Plaintiff became argumentative and pushed a correctional officer during the escort. When there is a conflict between the allegations in a pleading and exhibits attached thereto, it is well settled law that the exhibits control.

Crenshaw, 556 F.3d at 1292; see also Gross, 340 F. App'x at 533. Nevertheless, assuming *arguendo* that some force was necessary to gain compliance of Plaintiff during the escort because of his disorderly behavior, the Amended Complaint states a sufficient claim regarding the amount of force Defendants Gatto and Kilgo used on Plaintiff during the escort. The facts in the disciplinary report Plaintiff received stemming from the July 8 incident are not at odds with the issue of whether Defendants Gatto and Kilgo applied excessive force on Plaintiff in violation of the Eighth Amendment during the July 8 incident. Accordingly, the Motion is denied with respect to the July 8 incident and this claim proceeds against Defendants Gatto and Kilgo.

### 3. August 18 Incident-Defendants Gatto and Kilgo

The Amended Complaint contains no allegations regarding Defendant Walker and the August 18 incident. Thus, the Court addresses only those claims alleged against Defendants Gatto and Kilgo set forth in the Amended Complaint with respect to the August 18 incident.

The Amended Complaint contains sparse allegations as to Defendant Gatto's involvement with the August 18 incident. Plaintiff only claims that Gatto told Plaintiff that he was placed on "property restriction" by Defendant Kilgo. After Gatto told Plaintiff he was on property restriction, Plaintiff admits that in "a raging manner" he "screamed" at Gatto using expletives and,

using other words, asked Gatto why the guards continue to "mess" with him. Nevertheless, the Amended Complaint contains no other allegations whatsoever regarding Defendant Gatto's involvement with the August 18 incident. Thus, the Court finds the Amended Complaint fails to state a plausible claim as to Defendant Gatto and the August 18 incident and Defendant Gatto's Motion is granted. The Court now turns to address the claim against Defendant Kilgo.

In pertinent part, after Plaintiff screamed expletives at Gatto, Plaintiff claims Defendant Kilgo appeared at his cell door with a smile on his face, and in summary told Plaintiff that he would "brake" him one way or another. Plaintiff then acknowledges that another guard, later identified as Captain Worst, came to counsel Plaintiff to turn over his property, but he refused to comply with Captain Worst's directive and told the Captain that "if they wanted it [his property] they had to come in his cell and get it." Plaintiff claims one hour later the cell "extraction team" entered his cell. Although Plaintiff claims that the force used by the extraction team was excessive, Plaintiff neither names any defendants from the extraction team, nor does Plaintiff allege that Defendant Kilgo was apart of the extraction team. The exhibits attached to Plaintiff's initial Complaint evidence that Plaintiff received a disciplinary report stemming from the August 18 incident, *inter alia*, for having property thrown around his cell.

Plaintiff does not dispute the facts contained in this disciplinary report.

Liberally construing Plaintiff's Amended Complaint, the Court finds no causal connection between Defendant Kilgo and the use of force on August 18.  Defendant Kilgo's decision to place Plaintiff on property restriction when the disciplinary report evidences that Plaintiff had property thrown around his cell does not run afoul of the Eighth Amendment.  Moreover, the Court does not conclude that Plaintiff's allegation that Defendant Kilgo appeared at his cell door with a smile on his face, telling Plaintiff that he would "brake" him one way or another after Plaintiff yelled expletives at Gatto, relate to the force later used by the extraction team.  Instead, Plaintiff admits that he refused to turn over his property after he was informed that he was on "property restriction." Plaintiff further acknowledges that he told Captain Worst that "they would have to come into his cell to get it [his property]." The Amended Complaint does not contain any facts alleging that Defendant Kilgo was apart of the extraction team, that he directed the extraction team to go to Plaintiff's cell, or that he directed the extraction team to use the amount of force purportedly used on Plaintiff during the property extraction.  Consequently, the Court finds the Amended Complaint fails to state a claim as to Defendant Kilgo with respect to the August 18 incident.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The Defendants' Motion to Dismiss (Doc. #46) is **GRANTED** in part and **DENIED** in part as discussed herein. The action proceeds: against Defendant Kilgo with respect to the July 2 incident and against Defendants Gatto and Kilgo with respect to the July 8 incident.

2. Defendant Walker is **dismissed** from this action and the Clerk of Court shall enter judgment accordingly and terminate this defendant on the docket.

3. Defendants Kilgo and Gatto shall file an Answer within **fourteen (14) days** from the date on this Order.

**DONE AND ORDERED** at Fort Myers, Florida, on this ___13th___ day of June, 2012.

_____
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record