```
           UNITED STATES DISTRICT COURT
            MIDDLE DISTRICT OF FLORIDA
                FORT MYERS DIVISION
```

KELVIN J. READON, SR.,

        Plaintiff,

vs.                              Case No.  2:10-cv-236-FtM-29UAM

LIEUTENANT KILGO and LIEUTENANT GATTO,

        Defendants.
_____

## OPINION AND ORDER

### I.  Status

This matter comes before the Court upon review of the motion for summary judgment (Doc. #81, Motion) filed on behalf of Defendants Kilgo and Gatto.  Defendants attached the following exhibits (Doc. #81-1) in support of their Motion: excerpts of Plaintiff's deposition (Exh. A), Sergeant Walker's declaration (Exh. B), Carl Kilgo's declaration (Exh. C), Major Anderson's declaration (Exh. D), Sergeant Bates' declaration (Exh. E), use of force report dated July 2, 2009 (report no. 2008-510-0298)(Exh. F), fixed wing video recording incident on July 2, 2009 (Exh. G), Dean Glisson's declaration (Exh. H), copy of Rule 33-602.210 of the Florida Admin. Code (Exh. I), hand-held video recording dated July 2, 2009 (Exh. J), Plaintiff's pertinent medical records (Exh. K), Dr. Hemphill's declaration (Exh. L), Captain Gatto's declaration (Exh. M), use of force report dated July 8, 2009 (report no. 2008-510-0309)(Exh. N),  hand-held video recording dated July 8, 2009

showing transport of Plaintiff to the Medical Department (Exh. O), disciplinary report/conviction #510-091199 (Exh. P), and disciplinary report/conviction #510-091201 (Exh. Q).

On July 24, 2013, the Court entered an Order warning Plaintiff about the provisions of Fed. R. Civ. P. 56, and reminded Plaintiff of his responsibility to file a response to the Motion. See Doc. #83; see also Doc. #21 (warning at outset of case regarding Fed. R. Civ. P. 56). Plaintiff failed to file a response to the Motion and failed to otherwise respond to the Court's July 24, 2013 Order. See docket. Consequently, Defendants' Motion is ripe for review without the benefit of a response from Plaintiff.

## II. Background

Kelvin Readon, an inmate in the custody of the Florida Department of Corrections, initiated this action by filing a pro se Civil Rights Complaint (Doc. #1, Complaint) pursuant to 42 U.S.C. § 1983 on April 21, 2010. Pursuant to the Court's August 25, 2010 Order, Plaintiff filed an Amended Complaint (Doc. #17, Amended Complaint). On June 13, 2012, the Court entered an order (Doc. #53) granting in part and denying in part Defendants' motion to dismiss the Amended Complaint. At this stage of the proceedings, the remaining Eighth Amendment claims concern the alleged use of excessive force by Defendants Kilgo and Gatto, in their individual capacities, on July 2, 2009, and July 8, 2009, respectively, at Charlotte Correctional Institution. See Doc. #53.

As relief for the alleged excessive use of force, Plaintiff seeks a reward of damages "sustained through general negligence (culpable, wanton, gross, concurrent) and libel in the total amount of two hundred thousand dollars ($200,000)." Amended Complaint at 9.

### III. Undisputed Facts

The record sets forth the following undisputed facts, which are construed in the light most favorable to the Plaintiff. Plaintiff was a close management ("CM") inmate housed in the F Dorm on July 2, 2009, and later the Y Dorm after the July 8, 2009 incident at Charlotte Correctional Institution. Exh. B. Defendant Kilgo was the CM Housing Lieutenant. Exhs. B, C. Defendant Gatto was the CM Housing Sergeant. Exh. M. Both F Dorm and Y Dorm are disciplinary confinement dorms that house CM inmates. Exhs. C, D, M.

**July 2, 2009 Incident**

While Lieutenant Walker was addressing a disturbance caused by another inmate in the F dorm, Plaintiff began to cause a disturbance by kicking on his cell door, yelling profanities at correctional officers, and yelling to other inmates, because his request for toothpaste was denied.[1] Amended Complaint at 10; Exh.

---

[1] Plaintiff explains in the Amended Complaint that toothpaste is provided to inmates the third week of every month, but he did not know this rule because he was recently transferred. Amended Complaint at 10.

A at 19, Exh. B, Exh. J. Defendant Kilgo was called to address the issues with Plaintiff. Exhs. B, C. Captain Anderson, who is not named as a defendant, was also present. Exhs. B-F.

Although Kilgo and Anderson both directed Plaintiff to stop his disorderly conduct, Plaintiff refused and continued to yell obscenities at staff and kick his cell door. Exhs. C, D, F. Plaintiff's file was reviewed, and it was determined that he had no medical condition that would be exacerbated by use of chemical agents. Id. Warden Henderson authorized the use of chemical agents, if necessary, to stop the disturbance Plaintiff was creating. Id.

Defendant Kilgo called for the video camera. Exhs. C, F. Kilgo gave the final order to Plaintiff to cease his disorderly actions or chemical agents would be applied. Id. While chemical agents were being retrieved, Plaintiff stopped his disorderly conduct. Exhs. C, D, G.

Shortly thereafter, Plaintiff again began creating a disturbance. Id. Defendant Kilgo and Bates, who is not a named defendant, approached Plaintiff's cell and Kilgo again ordered Plaintiff to stop, but he refused. Exhs. C, E, F, G. Kilgo instructed Bates to use chemical agents on Plaintiff. Exhs. C, E, F. Kilgo rolled Plaintiff's cell door partway open, and Bates administered three, one-second bursts of the chemical agent O/C into the cell toward Plaintiff Id. Bates used 125 grams of

chemical agent. Id. Plaintiff used his mattress to shield himself from the chemical agent. Warden Henderson approved use of chemical agent C/S, if necessary, to stop Plaintiff from making a disturbance. Exhs. K-F.

Defendant Kilgo and Bates approached Plaintiff's cell and Kilgo again ordered Plaintiff to stop his disruptive behavior, but Plaintiff refused. Exh. C, E, G. Again, Defendant Kilgo instructed Bates to apply chemical agents on Plaintiff. Exhs C, E, F. Defendant Kilgo rolled the door partway opened, and Bates sprayed three, one-second bursts of chemical agent C/S into the cell toward Plaintiff. Exhs. C, E, G, F. This time Bates used 111 grams of chemical agents. Exh. C, E, F. Bates saw into Plaintiff's cell and observed that Plaintiff was not lying on the floor or injured in any way. Exh. C, E. The fixed-wing video confirms that only two applications of chemical agents were applied to Plaintiff and Bates was the person who applied them. Exhs. B-G.

The fixed wing videotape footage[2] confirms the follow exchanges between correctional officials and Plaintiff occurred on July 2, 2009:

    13:35:58013:36:47- Walker spoke with Plaintiff

    13:43:45-13:44:56- Anderson spoke with Plaintiff

---

[2]The fixed-wing video does not have any sound. The Court refers to a combination of the fixed-wing video recording, hand held video recording, and Defendants' declarations, which are undisputed, which reveal when correctional officials spoke to Plaintiff.

>13:55:11-13:55:20- Defendant Kilgo spoke with Plaintiff
>
>13:58:40-14:05:39- Rios spoke with Plaintiff
>
>14:05:50-14:06:16- Defendant Kilgo gave the video introduction for the handheld video and ordered Plaintiff to cease his disorderly conduct
>
>14:08:21-14:08:28- Defendant Kilgo looked briefly in to Plaintiff's cell
>
>14:16:01-14:16:38- Defendant Kilgo spoke with Plaintiff, who had stopped being disorderly; camera operator left with camera
>
>14:29:44- Bates and Defendant Kilgo approach Plaintiff's cell
>
>14:30:53-14:31:04- Defendant Kilgo rolled open the door and Bates applied chemical agents
>
>14:35:21- Walker briefly stood at Plaintiff's cell and looked in
>
>14:43:20-14:43:30- Bates and Defendant Kilgo approach Plaintiff's cell, Kilgo rolls open the door and Bates applied chemical agents
>
>14:44:46-14:45:17- Defendant Kilgo spoke with Plaintiff
>
>14:50:38-14:52:23- Defendant Kilgo, then Anderson and Kilgo, spoke with Plaintiff
>
>14:59-15:00- Kilgo approached Plaintiff's cell with other officers; Plaintiff submitted to hand restraints and exited the cell

Exhs. B-D, G.

As noted above, after the second application of chemical agents, Plaintiff stopped his disorderly conduct and submitted to handcuffs. The handheld video commenced and Plaintiff was escorted to the showers where he received a cold water decontamination shower and clean clothing. Exhs. C-F. Plaintiff then received a

post-use of force medical examination.  Exhs. K, L.  The nurse noted Plaintiff sustained stinging or burning sensations on his skin and his testicles, red eyes, and a red ear.  Exhs. K, L.  Plaintiff also complained of sharp pains in an area where he was previously diagnosed with an inguinal hernia.  Exh. K at 34, 36, 38; Exh. L at 42.  Plaintiff declared a psychological emergency, so he was placed in the shower to await his requested psychological evaluation.  Exhs. C, D, F, K at 37.  Plaintiff met with someone from the mental health department, Exh. A at 96-98, 99, and it was determined that Plaintiff did not need psychiatric help, id. at 98.  Plaintiff never received any additional medical treatment stemming from the July 2, 2009 use of force.  Id.

Plaintiff received a disciplinary report stemming from this incident for inciting a minor disturbance by shouting obscenities at the staff, beating on his door, yelling to other inmates, and refusing to comply with correctional officers' directives.[3]  Doc. #1-1 at 8.

---

[3] In addition to the allegations in the Amended Complaint, Plaintiff also included exhibits attached to his initial Complaint. Attachments to a complaint constitute a part of the pleading. Crenshaw v. Lister, 556 F.3d 1283, 1291 (11th Cir. 2009)(citing Fed. R. Civ. P. 10(c)); see also Gross v. White, 340 F. App'x 527, 533 (11th Cir. 2009)(stating a district court need not disregard exhibits plaintiff attached to initial complaint when reviewing a motion to dismiss plaintiff's second amended complaint).

**July 8, 2009 Incident**

An inmate broke the fire sprinkler in the F Dorm requiring that the water to the dorm be turned off. Exh. M. After the water was turned on, Plaintiff broke the fire sprinkler in his cell, which again required that the water be shut off while his fire sprinkler was repaired. Exh. C, D, M. Anderson ordered Defendant Gatto to escort Plaintiff to a cell in the Y Dorm because the fire sprinklers there are too high for inmates to reach. Id.

At approximately 2:02 p.m., Defendants Kilgo and Gatto escorted Plaintiff to Y Dorm. Exhs. C, M, N. As they exited F Dorm, Plaintiff became argumentative and pushed Defendant Gatto into the door jam. Exhs. C, M, N. Defendant Gatto ordered Plaintiff to stop, but he refused and attempted to pull away from Gatto's grasp. Id. Defendant Gatto applied spontaneous force to gain compliance of Plaintiff. Id. Defendant Gatto had a custodial hold of Plaintiff's left arm, so with both hands Gatto forced Plaintiff, face and chest first, down onto the ground. Id. While Gatto secured Plaintiff on the ground, Plaintiff was moving and threatened to kill Gatto's family. Exh. M. Defendant Kilgo did not apply any force to Plaintiff. Exhs. C, M. Anderson, who is not named as a defendant, responded to the sally port. Exh. D. Plaintiff did not lose consciousness. Exhs. C-E, M. Videotaping commenced and then correctional officers Henry and Bates, who are not named as defendants, escorted Plaintiff to the Medical

Department for a post-use of force examination. Exhs. D, E, N. Plaintiff sustained a scratch on his right cheek, but had no other injuries.  Exh. A at 160; Exhs. D, K at 40, L, O.  The nurse cleaned the scratch with a wipe.  Exhs. D, K, L, O.  Plaintiff never received any treatment after July 8, 2009 relating to the use of force.  Exh. D, E, K, L, O.

Plaintiff was convicted of a disciplinary report # 510-091199 for disobeying an order, which has not been expunged, or overturned:

> On 7/08/09 at approximately 2:02 p.m. while assigned as the F-Dormitory Sergeant, Lieutenant Kilgo and I were escorting inmate Readon, Kelvin, DC # M31170 from F-Dormitory to Y-Dormitory due to him breaking a fire sprinkler in F-Dormitory.  As we were exiting the front door of the F-Dormitory 1-2 side sallyport, inmate Readon became argumentative and pushed against me with his left shoulder, pushing me into the door jam.  I gave the inmate an order to cease his disorderly actions but he refused as he attempted to pull away from my grasp.  At this time, it became necessary to utilize force.

Exhs. C, D, M, P, Q.

Plaintiff was also convicted of disciplinary report #510-091201, for tampering with a fire sprinkler, which as not been expunged, or overturned:

> On 7/08/09 at approximately 1:39 PM while assigned as the F-Dormitory Housing Sergeant, I observed a large amount of water flowing from cell F1-205 which solely houses inmate Readon, Kelvin, DC #M31170.  I then heard the firm alarm activate.  I approached cell F1-205 and observed that inmate Readon had pulled the safety device off the fire sprinkler in his cell causing the fire sprinkler to activate.  Inmate Reason was uncooperative at all attempts to counsel him.  I informed inmate Readon that he would be receiving a disciplinary report for 9-34,

> Tampering with or Defeating Any Fire or Other Safety Device and that he would be charged the cost of the fire sprinkler head, which is $38.00.

Exhs. C, D, M, Q.  Plaintiff has not submitted any evidence contradicting Defendants' evidence.

## IV. Applicable Law

### A. Standard of Review

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted). See also, Fed. R. Civ. P. 56(c)(2).  "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(emphasis added), not to make all *possible* inferences in the non-moving party's favor.

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e.,

affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. Beard, 548 U.S. at 529 (citations omitted); Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

In cases where there is video evidence, the Court accepts the video's depiction over the opposing party's account of the facts where the video obviously contradicts the version of the facts.

Pourmoghani-Esfahni v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010)(per curiam)(quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). Even where the entire series of events is recorded, video evidence is not obviously contradictory where it fails to convey spoken words or tone, or fails to provide an unobstructed view of the events. Id.; see also Logan v. Smith, 439 F. App'x 798 (11th Cir. 2011)(unpublished).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh, 268 F.3d at 1059; Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-692 (1978); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003).

**B. Eighth Amendment**

Liberally construing the Amended Complaint, Plaintiff alleges violations of the Eighth Amendment under the United States Constitution. See generally Amended Complaint. The Eighth Amendment, which applies to the states through the Fourteenth Amendment, can give rise to claims challenging the excessive use of force. Thomas v. Bryant, 614 F.3d 1288, 1305 (11th Cir. 2010)(reviewing categories of claims under the Eighth Amendment). An excessive-force claim requires a two-prong showing: (1) an objective showing of deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities"; and, (2) a subjective showing that the official had a "sufficiently culpable state of mind." Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)(other citations omitted)). It is the "unnecessary and wanton infliction of pain" caused by force used "maliciously and sadistically" for the very purpose of causing harm that constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 322 (1986).

Thus, where an Eighth Amendment claim is based upon allegations of excessive force, the question turns on whether the prison guard's "force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005). To determine whether force was applied

-13-

"maliciously and sadistically," courts consider the following factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted). When considering these factors, the courts "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)(citations omitted). The courts examine the facts as reasonably perceived by Defendants on the basis of the facts known to them at the time. Whitley v. Albers, 475 U.S. 312, 321 (1986).

Moreover, in the context of prison discipline, a distinction is made between "punishment after the fact and immediate coercive measures necessary to restore order or security." Ort v. White, 813 F.2d 318, 324-325 (11th Cir. 1987). When a prison's internal safety is of concern, courts conduct a more deferential review of the prison officials' actions. Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991)(citations omitted). Indeed, "[t]hat deference extends to a prison security measure taken in response to

an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches in prison discipline." Whitley, 475 U.S. at 322; see also Bell v. Wolfish, 441 U.S. 520, 547 (1979).

## V. Discussion

Defendants Kilgo and Gatto move for summary judgment, arguing that they are entitled to judgment as a matter of law as to the Eighth Amendment claims. See generally Motion. Defendants also raise Eleventh Amendment immunity to the extent they are sued in their official capacities; Qualified Immunity; and, argue that Plaintiff is not entitled to injunctive relief. Plaintiff does not oppose the Motion. Id. Based upon the evidence of record, the Court agrees that Defendants are entitled to summary judgment.

The record shows the need to use force without contradiction. On July 2, 2009, Plaintiff was acting disorderly by kicking his cell door, yelling obscenities at staff, and yelling to other inmates in the dorm. Whether Plaintiff began to act disorderly because correctional officials refused to provide him with toothpaste upon his request is not material to this analysis. Plaintiff's actions were disruptive to the dorm and threatened security at the institution. Plaintiff failed to comply with correctional officials' directives to stop his disruptive behavior, thereby necessitating the use of chemical agents.

The fixed-wing video confirms that only two applications of chemical agents were applied to Plaintiff and that Bates, who is not a named defendant, was the person who applied them. The record reveals that Defendant Kilgo directed Bates to spray the chemical agents into Plaintiff's cell. Bates administered three, one-second bursts of the chemical agent O/C into the cell after Kilgo opened the door. A total of 125 grams of chemical agents were applied on Plaintiff. Plaintiff used his mattress to shield himself from the chemical agent and continued to be disruptive. As a result, Defendant Kilgo and Bates retrieved chemical agent C/S, and Kilgo instructed Bates to apply these chemical agents on Plaintiff. Defendant Kilgo rolled the door partway opened and Bates used three, one-second bursts of chemical agent C/S. This time Bates used 111 grams of chemical agents. Plaintiff suffered the common ailments after being sprayed with chemical agents, including a burning or stinging sensation on his skin and red eyes. Immediately upon submitting to hand restraints, Plaintiff was escorted to the shower for a cold water decontamination shower and then to the Medical Department.

Viewing the record as a whole, the Court concludes as a matter of law that Defendant Kilgo did not maliciously or sadistically use force to cause harm to Plaintiff. The use of force was precipitated by Plaintiff's disruptive behavior. "Pepper spray is an accepted non-lethal means of controlling unruly inmates."

Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008)(citing Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000)(citing cases); cf. Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002)), overruled other grounds, Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). The amount of chemical agents Bates used was tempered and did not exceed what was necessary to stop Plaintiff from continuing to cause chaos in the dorm. Plaintiff's injuries were *de minimus*. The Court considers the fact that Plaintiff sustained minimal injuries to support its finding that the force was not done for malicious or sadistic purposes. Nevertheless, after Plaintiff became orderly, he received a shower, followed by a prompt post use of force medical evaluation. Consequently, the Court finds Defendant Kilgo is entitled to judgment as a matter of law stemming from the July 2, 2009 use of force.

Similarly, the uncontroverted evidence of record shows the need to use force on Plaintiff during the July 8, 2009 escort. During an escort to another dorm after breaking his fire sprinkler in his cell, Plaintiff pushed Defendant Gatto into a door jam and continued to act non-compliant, despite being warned to stop. Consequently, Defendant Gatto forced Plaintiff to the ground chest and face first. Defendant Kilgo was present, but applied no force to Plaintiff. The use of force by Gatto was again precipitated by Plaintiff's behavior and was not applied maliciously or sadistically to cause harm. The Court cannot find that Gatto's

movements effectuating the take down of Plaintiff to the ground or subsequent securing of Plaintiff on the ground until another correctional officer arrived amounted to a violation of Plaintiff's Eighth Amendment rights. See Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990)(finding it was not unreasonable for a guard to grab a prisoner by the throat and shove him against the prison bars when the prisoner was failing to follow the guard's instructions and yelling obscenities); Cockrell, 510 F.3d at 1311 (finding in similar circumstances that force sufficient to break bones did not violate the Eighth Amendment); Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."), rev'd, Graham v. Connor, 490 U.S. 386 (1989)(finding Glick test incompatible with Fourth Amendment analysis).

Plaintiff was immediately escorted to the Medical Department for a post-use of force examination. The immediate transport of Plaintiff to medical shows that correctional officials tempered the severity of the use of force. The undisputed medical documents written contemporaneously with Plaintiff's medical examination evidence that Plaintiff sustained only a scratch on his check, which was treated with a wipe. The record does not indicate that Plaintiff made any requests for medical treatment thereafter. Thus, the record shows that the extent of Plaintiff's injuries

resulting from the use of force were minimal. The Court recognizes that a plaintiff need not suffer serious injuries to prevail on an excessive use of force claim. Nonetheless, the Court considers the injuries in this case relevant to the determination that the force used in this case was applied in a good faith effort to maintain or restore discipline, and was not done maliciously and sadistically to cause harm. Consequently, the Court finds Defendants Kilgo and Gatto are entitled to judgment as a matter of law stemming from the July 8, 2009 use of force.

Because the Court finds Defendants are entitled to judgment as a matter of law, the Court will not address Defendants' remaining arguments.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Defendants' unopposed motion for summary judgment (Doc. #81) is **GRANTED**.

2. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Fort Myers, Florida, this  19th  day of November, 2013.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: alj
Copies: Counsel of record